**RETTIG et al. v. REYNOLDS et al.
(No. 9088.)**

Court of Civil Appeals of Texas. Galveston.
Feb. 2, 1928.

Rehearing Denied Feb. 23, 1928.

Trusts ⊙⟶35(1)—Agreement that purchaser should hold property in trust for persons having contract to purchase held binding, whether or not contract was enforceable.

Agreement that purchaser of certain property should hold the property in trust for persons who had a contract with the owner for the purchase of the property *held* binding after purchase under the agreement, regardless of whether or not the contract to purchase was unenforceable because the owner was a married woman when it was executed.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Action of trespass to try title by Mrs. Minnie Rettig and husband against J. H. Reynolds and others. From the judgment, named plaintiff appeals. Affirmed.

Hill & Harvey, of Houston, for appellant. Jno. M. Cobb, of Houston, for appellees.

⊙⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

PLEASANTS, C. J. This is an action of trespass to try title, brought by appellant, Mrs. Minnie Rettig, joined by her husband, W. E. Rettig, against J. H. Reynolds and Mrs. Minnie Bogard and Jesus Mendez, to recover title and possession of two tracts of land, aggregating 14½ acres, and being parts of the Juan Sutton survey in Harris county, and fully described by metes and bounds in plaintiff's petition.

The defendant J. H. Reynolds filed a disclaimer. The defendant Mendez answered by general demurrer and general denial, and further specially pleaded, in substance, that he held possession of the land as a tenant of Mrs. Beulah Calkins and other parties named in the answer, who were the heirs of F. C. Brincefield, deceased; that Brincefield entered upon and made valuable improvements on the land in his lifetime under a contract of purchase from J. O. Ross and wife, Ellen B. Ross, the then owners of the land; that Brincefield's heir named in the answer have since his death held possession of the land through tenants and have made further improvements thereon; that in July, 1924, the plaintiff Mrs. Rettig entered into a contract with the Brincefield heirs by which she agreed to pay the balance due J. O. and Ellen B. Ross on the Brincefield contract, take a deed to the land, and convey it to said heirs in consideration of an obligation on their part to repay her the amount paid by her for the land on the Ross contract, such repayment to be made in yearly installments of $100, with 8 per cent. interest on the whole amount due under the contract; that, in violation of her agreement, the plaintiff, after obtaining a deed to the land from J. O. Ross and wife, conveyed to defendant Reynolds, who thereafter conveyed to defendant Mrs. Bogard. The good faith of each of these conveyances is denied in the answer, and facts are alleged sufficient to sustain the charge.

This answer then alleges the issuance of a writ of sequestration sued out by the plaintiff and placed in the hands of T. A. Binford, sheriff of Harris county, the execution of which it is averred will cause damage to defendant, and prays for a writ of injunction against plaintiff and the sheriff, restraining the execution of the writ of sequestration.

The answer of defendant Mrs. Bogard avers, in substance, that she purchased the property in good faith and in reliance upon the promise of both the defendant Reynolds and the plaintiff that she would be given immediate possession. She then avers that her failure to obtain possession of the property has damaged her in the sum of $2,900, and prays for recovery of this amount against the plaintiff, the defendant Reynolds, and the interveners, Mrs. Beulah Calkins and her husband, George V. Calkins.

The appellees, who are the heirs of F. C. Brincefield, intervened in the suit, and, after alleging the contract of purchase executed by J. O. Ross and Ellen B. Ross to F. C. Brincefield and compliance by Brincefield with the terms of the contract up to the time of his death, make the further allegations as copied from appellant's brief:

"That, prior to the death of F. C. Brincefield, the said Mrs. Beulah B. Calkins and husband, George V. Calkins, made a payment on said two contracts on or about March 24, 1924, or $208, being payments due up to the 30th of June, 1924, of which sum they borrowed from Mrs. Minnie Rettig $170, of which they paid back to her $51. That about July 17, 1924, Mrs. Minnie Rettig. came to said Beulah B. Calkins and husband, and promised she would furnish the money to pay off the said Ellen B. Ross and husband all of the balance due on both contracts, and would permit the interveners in this case, the said Beulah B. Calkins and husband, to pay the same off in yearly installments of $100 per year on both tracts, with 8 per cent. interest, and that she (said Mrs. Minnie Rettig) would have said property deeded to her, and that she would, as soon as she got title to said property, make a deed to said interveners, Calkins, they to execute vendor's lien notes payable at the rate of $100 per year on the principal, for the amount said Mrs. Rettig was to advance, to wit, $963.75. Further alleging: That Mrs. Rettig was merely taking the deed in her name in order to secure herself for the money that she would have to pay the said Ellen B. Ross and husband, she (Mrs. Rettig) hold same in- trust for interveners until same was refunded, and that, in accordance with said agreement and relying upon the promises and representations of said Mrs. Rettig, the said Calkins agreed to said transaction, and that on July 17, 1924, said Mrs. Minnie Rettig paid to said Ellen B. Ross and her husband, J. O. Ross, the sum of $301, and executed to them a vendor's lien note for $543.75, due on or before one year after its date, and said Ellen B. Ross and her husband, J. O. Ross, executed to said Mrs. Rettig their general warranty deed to said land, retaining a vendor's lien to secure the note, conveying the land involved, but that said deed did not state that the same was to be held by the said Mrs. Rettig in trust for the interveners, but said deed did recite that the property therein conveyed was the same bought by F. G. Brincefield. That it was the distinct understanding between Beulah B. Calkins and Mrs. Minnie Rettig that said Mrs. Rettig was to hold same in trust for interveners. That said promises by the said Mrs. Rettig were fraudulently made and for the purpose of cheating and defrauding the interveners out of said property, and after the said Mrs. Rettig got said deed she told the said Mrs. Beulah B. Calkins that she was going to take said property and cheat them out of their equity in same. They further alleged: That they are in possession of said property and the Jesus Mendez was their tenant, and had been in possession of said property before and since the death of their father, F. G. Brincefield. That, in permitting Mrs. Rettig to take said property, Mrs. Beulah B. Calkins and husband relied upon her agreement aforesaid and did not know the promises made were to defraud them out of said property. That after Mrs. Rettig secured the deed from Ross and wife, she and

her husband executed a deed to J. H. Reynolds on September 4, 1924, conveying said property for a recited consideration of $1 cash and seven notes for $200 secured by vendor's lien on the property. That Reynolds on November 15, 1924, conveyed the property to Mrs. Minnie Bogard for $2,800, of which $700 was paid in cash, and assumption of said seven notes for $200 each executed by Reynolds to Mrs. Rettig, and the further sum of $700, evidenced by vendor's lien note payable $50 per year from one to fourteen years after that date. That Mrs. Bogard was advised of the claim of said interveners before she took said deed and was not an innocent purchaser. They further alleged: That, at the time of the transaction between Ross and wife and Mrs. Minnie Rettig and husband with Mrs. Beulah B. Calkins, and at the time of the execution of the deed from Mrs. Rettig to Reynolds, and the deed to Mrs. Bogard, all the plaintiffs and defendants knew of the interest of the interveners in said property, and knew interveners were in possession of same. Interveners offered to do equity and to pay such sum of money as the court may find they should pay in order to redeem and recover said property, and alleged that on or about January 1, 1926, they were lawfully seized and possessed of the two tracts of land involved, claiming the same in fee simple, that on said day plaintiffs and defendants unlawfully entered upon said premises and ejected interveners therefrom, and unlawfully withheld the possession thereof, and prayed for title and possession of said land, that the deed from Ross and wife be canceled, and the deed from Mrs. Rettig to Reynolds and the deed from Reynolds to Mrs. Bogard be canceled, and prayed in the alternative that the said Mrs. Rettig and husband be ordered to perform specifically the contract they pleaded, and convey to the interveners' said property."

After all the evidence had been heard on the trial, the court withdrew the case from the jury which had been impaneled to try the issues of fact, and rendered a judgment in favor of plaintiff for the title and possession of the property against all of the defendants, subject, however, to the right of redemption in favor of the interveners, appellees herein. "It is therefore by the court considered, so ordered, adjudged, and decreed that, if the interveners pay to the plaintiff Mrs. Minnie Rettig, or pay into the registry of this court for the use of the said Mrs. Minnie Rettig, the sum of $876.81 in cash on or before March 3, 1927, and shall pay to the said Mrs. Minnie Rettig, or pay into the registry of this court for her use and benefit, the three annual unmatured installments of $100 each which

will become due on June 30, 1927, June 30, 1928, and June 30, 1929, with interest on said installments from this date until they are paid, and said installments and interest are paid as they mature, then and in that event the title to the above-described property shall be and is hereby divested out of the plaintiff Mrs. Minnie Rettig, and vested in the interveners hereinbefore named; but, should the said interveners fail to pay said sum of $876.-81 or should fail to pay any of said unmatured installments when due as herein provided, then and in that event the title to said property shall become and is hereby vested in the plaintiff, Mrs. Minnie Rettig, freed, released, and discharged from any and all claims of the interveners or any of them."

From this judgment only the plaintiff Mrs. Rettig has appealed.

Appellant's brief complains of the judgment on the one ground that the property in controversy, having been the separate property of Mrs. Ross, as shown by the undisputed evidence, her executory contract for its sale to Brincefield was unenforceable, and no specific performance thereof could be decreed by the court.

If it be conceded, for the sake of argument, that the Brincefield contract could not have been enforced because Mrs. Ross, the owner of the property, was a married woman at the time the contract was executed, it could not affect the validity of this judgment. This is not a suit to enforce a contract against Mrs. Ross. She has by a valid conveyance placed the title to the property in the plaintiff, has received full consideration therefor, and is not a party to this suit. The plaintiff, as found by the trial court, having obtained the deed to the property from Mrs. Ross under an express valid agreement with the interveners that the title so obtained should be for their benefit, cannot defeat intervener's suit to enforce their rights against her growing out of the trust relationship, on the ground that the interveners could not have compelled Mrs. Ross to convey the land to them. We do not decide that, upon the facts of this case, the Ross contract could not have been enforced, but, be that as it may, its infirmity is not available as a defense to appellees' suit against appellant.

We think the judgment should be affirmed, and it has been so ordered.

Affirmed.